[Civ. No. 6639. Second Appellate District, Division One.—December 8, 1931.]

E. L. MILLS, Respondent, v. L. A. FRIEDMAN, Appellant.

Charles W. Cradick and Claude W. Corlett for Appellant.

Homer C. Mills for Respondent.

HOUSER, J.—Through the efforts of plaintiff and two others, respectively named Pitblado and Copps, defendant became the owner of a large ranch, together with certain farming implements and livestock located thereon. However, defendant's ownership in the property was subject to a mortgage thereon amounting to the sum of $50,000. In addition thereto defendant appears to have been indebted to plaintiff, Pitblado and Copps in at least the sum of $6,000 on account of services rendered by them in his behalf in connection with certain negotiations which led to the acquisition by the defendant of the property. It also appears that it was agreed among the several parties that out of any sale that might be made of the property, after

allowing for the $50,000 mortgage thereon and paying to defendant $48,000 for his assumed equity therein—after paying the indebtedness of $6,000 and any other moneys advanced by any of the several parties in the maintenance and operation of the ranch, plaintiff, Pitblado and Copps would be entitled to the remainder of the sale price of the property. Preceding such contemplated sale, and during a fixed period of time, the three last-named persons (which included plaintiff) were to operate the ranch. To that end, Pitblado and Copps each advanced $750, which was banked as "Pitblado's special account". Whatever expenses over the sum of $1500 advanced by Pitblado and Copps which might become necessary to operate the ranch were to be borne and paid by defendant. Plaintiff was placed in possession of the ranch as manager thereof; but the foreman of the ranch, who had been acting as such prior to the time when defendant became its owner, remained in the same capacity under the managership of plaintiff. Shortly thereafter, and in accordance with ordinary practice, in pursuance of the advice of the said foreman, and with the consent and approval of Pitblado, but without the knowledge of defendant, plaintiff, as manager of the ranch, sold certain calves which were a part of the livestock on the ranch for the sum of $623.70, which amount was deposited in the bank in "Pitblado's special account", where it remained until it was disbursed by Pitblado in the payment of bills which had been incurred in operating the ranch. Some two weeks or more thereafter, when defendant learned of the sale of the calves, he swore to a criminal complaint by which plaintiff was charged with the commission of a felony, in that he had sold property subject to a contract, the conditions of which were yet unfulfilled, in violation of the provisions of section 504a of the Penal Code, upon which a warrant of arrest of plaintiff was issued and plaintiff thereupon was taken into official custody. On the preliminary hearing of such charge plaintiff was discharged by the magistrate. Thereupon the plaintiff brought an action against defendant and one Clute for malicious prosecution, which action resulted in a judgment in favor of plaintiff and against defendant Friedman for the sum of $2,500. It is from said judgment that the instant appeal is prosecuted.

On the trial of the action, in addition to the facts herein-before set forth, evidence was presented to the effect that, for the intended purpose solely of facilitating the sale of the ranch, and not otherwise, defendant had executed a deed of trust of the said property to a corporation, wherein plaintiff and his wife were specified as the beneficiaries thereunder; that contemporaneously therewith the corporation executed its declaration of trust regarding the said property, and plaintiff and his wife executed their several promissory notes for the aggregate sum of $50,000 in favor of defendant, and thereupon assigned their beneficial interest in the trust to the said corporation as security for the payment of said indebtedness. But in no manner does it appear that by such pretended transactions, or either of them, it was claimed or intended by any of the parties thereto that either plaintiff or defendant was in any way bound or obligated, or that the actual or equitable position occupied by either of the several respective parties one toward the other was in anywise changed or altered, or intended by any of the said parties to be in anywise changed or altered, by reason of the execution of either or all of such instruments.

The evidence adduced on the trial of the action disclosed the further fact that, prior to causing the arrest of plaintiff, defendant consulted the district attorney of the county of Riverside, by whom in substance he was advised that plaintiff had committed the felony specified in section 504a of the Penal Code, to wit, having sold ''personal property or effects of another in his possession, under a contract of purchase not yet fulfilled''. But both by the evidence of plaintiff and by that of defendant, it was unquestionably established that at no time had plaintiff either actually purchased or agreed to purchase from defendant the calves which plaintiff had sold, and for which sale he had been prosecuted.

With reference to the liability of defendant, among other findings made by the trial court, the following appear:

''That before signing the complaint upon which warrant was issued for the arrest of the plaintiff, the defendant L. A. Friedman, consulted Fred Ford, Esq., an attorney at law and prosecuting attorney of Riverside County, California, who advised said L. A. Friedman to sign said com-

plaint, and that said proceedings would be justified, but that said defendant, L. A. Friedman, did not make to said Fred Ford, a full, or fair disclosure of all the facts within his knowledge, and said L. A. Friedman did not act upon the advice of said counsel in good faith, and did not have an actual or honest belief in the truth of the charge so laid in said complaint, at the time of signing said complaint and procuring a warrant for the arrest of the plaintiff.

"That in causing the arrest of the plaintiff, the defendant, L. A. Friedman, acted maliciously and without probable cause."

The principal point presented by appellant is that the evidence adduced on the trial of the action showed neither malice on the part of defendant toward plaintiff, nor want of probable cause, for instigating the prosecution of plaintiff.

Since the respective parties to this appeal appear to be in harmony one with the other as to the general legal principles which relate to an action for damages arising from the malicious prosecution of any person, it becomes necessary for this court to determine the one question upon which the parties are disagreed, namely, as to whether any substantial evidence was presented to the trial court from which it was authorized to make the findings of fact to which attention has been directed. In that connection, because of the admittedly legal effect which a lack of probable cause for a criminal prosecution may have upon the element of malice in the instigator thereof, an inquiry by this court, in the first instance, will be directed to the former situation.

Assuming broadly as a correct legal principle that which apparently is conceded by each of the parties to this litigation, to wit, that if before instituting the criminal action against plaintiff, defendant in good faith made a full and fair disclosure of all the facts within his knowledge to the district attorney of Riverside County, as to himself, defendant would incur no civil liability by reason of such prosecution—the research of this court must be directed toward the ascertainment of what, if any, facts known to defendant were omitted from the statement made by him to the said district attorney. In that connection, the record herein shows that, among other pertinent facts known to

defendant, but which he failed to tell to the district attorney of Riverside County were the following, to wit: That at the time he sold the calves plaintiff was the manager of the ranch; that as such manager, in accordance with the usual practice and for the purpose of protecting the remainder of the herd of cattle on the ranch, and after consultation with the foreman of the ranch, and with the advice, approval and acquiescence of Pitblado, the calves were sold; also, that defendant, with knowledge of the facts, failed to inform the said district attorney of the truth of the situation which existed between defendant and plaintiff with reference to the purported purchase of the ranch and personal property thereon, as apparently (although not in reality) was disclosed by the said trust deed, the $50,000 promissory notes made by plaintiff, and the assignment by him and his wife of their pretended beneficial interest in the property; that likewise defendant did not disclose the fact to the said district attorney that no *bona fide* agreement existed on the part of plaintiff to purchase said calves from defendant. Nor did defendant tell the said district attorney the facts within his knowledge with reference to the connection which Pitblado had and sustained toward the sale of the calves, or the disposition of the proceeds of such sale. In other words, defendant did not mention the fact that, although the check in payment of the calves was made payable to plaintiff, he had indorsed and delivered said check to Pitblado, who deposited it in "Pitblado's special account", and who alone handled the money and thereafter disbursed it in payment of debts contracted by the parties in the operation and maintenance of the ranch; and consequently, as a matter of fact, that plaintiff never received "one penny" of the money which was derived from the sale of the calves. Nor prior to the preliminary examination of plaintiff on the criminal charge preferred against him did defendant ever inform the district attorney of the financial relationship which existed between plaintiff and defendant, or among all the respective parties to the several transactions which led to the acquisition by defendant of the ranch or of the manner of financing the operation of the ranch, or of the agreement among such parties with reference to the pro-

posed division of the money which might be received from the sale of the ranch.

The syllabus in the case of *Vernon* v. *Plumas Lumber Co.*, 71 Cal. App. 112 [234 Pac. 869], which is supported not only by the language of the opinion but as well by authorities therein cited, is as follows:

"In an action for damages for malicious prosecution, where every element of the defense of advice of counsel and probable cause rests upon disputed facts, and the trial court finds upon conflicting evidence that the agents of defendant did not act either honestly or in good faith upon the advice of counsel, that defendants' agents did not state to said persons all the facts in the case, that defendant's agents were not advised that a criminal prosecution would lie and that there was not probable cause for the prosecution had, the conclusions of the trial court are conclusive upon appeal, even though there is testimony from which the trial court might have come to a different conclusion."

Accepting such statement of the law as a correct declaration of a legal principle applicable to the question here at issue, it would follow that the contention of appellant to which attention has been directed cannot be sustained by this court—that is to say, that the finding by the trial court as to the lack of good faith in defendant in instituting the criminal proceeding against plaintiff, and the consequent want of probable cause therefor, is fully justified by the evidence adduced on the trial of the action.

That malice may be inferred from want of probable cause is also well-established law. (*Robinson* v. *McKnight*, 103 Cal. App. 718 [284 Pac. 1056]; *Randleman* v. *Boeres*, 93 Cal. App. 745 [270 Pac. 374]; *Burke* v. *Watts*, 188 Cal. 118 [204 Pac. 578].)

But if more were necessary to establish malice in the mind of defendant against plaintiff, it might be supplied from a consideration of the evidence as to certain statements made by defendant preceding the arrest of plaintiff. Without herein setting forth in detail the *verbatim* declarations of defendant in that regard, it may suffice to state that in general they disclosed a state of mind in defendant which evinced an unquestionable ill will against plaintiff, coupled with the determination on the part of defendant to insist upon and to press a criminal prosecution against

plaintiff for the purpose of forcing, if possible, a favorable financial settlement to the benefit and in the interest of defendant of certain civil claims which he held against plaintiff, rather than to be of assistance to the state of California in the punishment of a criminal act, or the general administration of justice.

■ Appellant also complains that, although by the findings of fact and the ensuing judgment plaintiff was awarded an amount of money° which included the sum of $800 allowed as attorney's fees, no evidence was introduced on the trial of the instant action as to whether such expenditure by plaintiff as and for attorney's fees in his defense of the criminal action against him was reasonable. That on such question, especially where tried before the court sitting without a jury, no evidence is necessary, has been repeatedly decided by the appellate courts of this state. (*Spencer* v. *Collins*, 156 Cal. 298, 306, 307 [20 Ann. Cas. 49, 104 Pac. 320]; *Estate of Duffill*, 188 Cal. 536, 552 [206 Pac. 42]; *Kirk* v. *Culley*, 202 Cal. 501, 505 [261 Pac. 994]; *Estate of Iser*, 52 Cal. App. 405, 408 [198 Pac. 1014]; *Grecian* v. *Jackson*, 76 Cal. App. 264 [244 Pac. 608]; *Bowman* v. *Maryland Casualty Co.*, 88 Cal. App. 481, 492 [263 Pac. 826]; *Moore* v. *Maryland Casualty Co.*, 100 Cal. App. 658, 667 [280 Pac. 1008]; *Theisen* v. *Keough*, 115 Cal. App. 353 [1 Pac. (2d) 1015].)

No other point presented by appellant merits discussion by this court.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 5, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 4, 1932.